IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY MEEKS and AMY MEEKS, *individually and on behalf of their minor daughter, A.M.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> TERRY HRONEC, INANNA WELLER, and CLAY COUNTY, <br><br> **Defendants.** | Case No. 3:25-CV-1137-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a motion to dismiss Counts III and IV of the amended complaint filed by Defendants Terry Hronec, Inanna Weller, and Clay County. (Doc. 17). Plaintiffs Terry Meeks and Amy Meeks, individually and on behalf of their minor daughter, A.M., filed a response in opposition (Doc. 20). For the following reasons, the motion to dismiss is denied.

## BACKGROUND

The following facts from the amended complaint are taken as true for the purposes of Defendants' motion to dismiss.

Plaintiffs' family dog, Creedence, got loose from their yard on October 18, 2024. (Doc. 6, ¶¶ 11–12). He wound up at the home of Tina and Brad Briscoe. *Id.* ¶ 13. They weren't worried Creedence was dangerous, but they did want him off their property. *See id.* ¶¶ 14, 16, 21, 25. After calling Clay County Animal Control and Shelter, the

Briscoes fed and watered Creedence. *Id.* ¶ 14. They waited, but Animal Control didn't show up. *Id.* The next day, October 19, the Briscoes called Animal Control again, hoping for help with Creedence. *Id.* ¶ 19. This time, Animal Control sent someone. *See id.* ¶ 17.

Enter Defendant Inanna Weller. It was Weller's first official day as an officer with Clay County Animal Control and Shelter, so she was sent to the Briscoes' for Creedence. *Id.* ¶¶ 17-18. But Weller had not received any formal training on animal control procedures—which might explain why she didn't bring any equipment to the Briscoes' home that day. *Id.* ¶¶ 17-18.

Without a catchpole or the other accoutrements of an animal control officer, Weller found herself unequal to her task. *Id.* ¶ 17; *see id.* ¶ 19. Realizing she was out of her depth, Weller sought help from an unlikely corner: elected Clay County Board member Terry Hronec. *Id.* ¶¶ 7, 19. Defendant Hronec may not have had any animal control certification from Clay County, but don't worry—he also hadn't had any formal training. *Id.* ¶¶ 20, 26.

Despite Hronec's seemingly total lack of animal control qualifications, he soon arrived at the Briscoes' property. *Id.* ¶ 20. Hronec brought with him the tools Weller had apparently forgotten: a catchpole, a tranquilizer gun, tranquilizer darts, and medication (all property of Clay County Animal Control and Shelter). *Id.* He also brought a gun. *Id.* While Weller (the actual animal control officer, though untrained) looked on, Hronec (not an animal control officer, and also untrained) began doing Weller's job for her.

Hronec began by shooting Creedence twice with the tranquilizer gun. *Id.* ¶¶ 22-23. Given time, the sedatives in the tranquilizer darts would have rendered Creedence

immobile. *See id.* ¶ 22. But Hronec didn't feel like waiting. *Id.* ¶ 22; *see id.* ¶¶ 23–24.

Though Creedence was already disoriented and slowed, Hronec caught him with the catchpole and dragged him to the center of the yard. *Id.* ¶¶ 23–24. Hronec asked Ms. Briscoe, then present, if he could shoot the restrained and increasingly sedated Creedence. *Id.* ¶¶ 24–25. Ms. Briscoe assented, so Hronec took his firearm and shot Creedence in the head. *Id.* By the time Plaintiffs contacted Clay County Animal Control and Shelter to report Creedence missing, he was already dead. *Id.* ¶ 28.

At some point after the shooting, Weller and Hronec decided to hide what had happened from Plaintiffs. *See id.* ¶¶ 29–32, 49–51. Hoping to prevent the facts from getting out, they agreed not to file a report about Creedence's death. *Id.* ¶ 51. They agreed they would not tell the family how Hronec had put a bullet through Creedence's head. *Id.* ¶ 49. And, perhaps realizing that a bullet-hole might be a giveaway, they agreed to try to convince Terry and Amy Meeks that Creedence should be cremated, thereby destroying the evidence of their deed. *Id.* ¶ 50.

Weller and Hronec's plan started off smoothly. As agreed, neither Weller nor Hronec filed a report. *Id.* ¶ 31. When Weller told Terry and Amy Meeks what had happened, she omitted the shooting from her version of events, successfully leading them to believe Creedence had died from the effects of the tranquilizers. *Id.* ¶ 29. But their plan hit a snag when Terry Meeks came to pick up the body. Weller tried to persuade him to cremate Creedence and even offered to take care of it herself. *Id.* ¶ 32. But Terry declined her offer. *See id.* ¶¶ 32–33. Left with no choice, Weller turned over Creedence's body. *See id.* Plaintiffs discovered the truth, and this lawsuit followed. *Id.* ¶ 34.

Terry and Amy Meeks assert eight claims against Hronec, Weller, and Clay County: illegal seizure in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 (Count I), failure to intervene under § 1983 (Count II), civil conspiracy under § 1983 (Count III), *Monell* liability for Clay County under § 1983 (Count IV), and four related state-law claims (Counts V–VIII). (Doc. 6). Hronec, Weller, and Clay County filed an answer as to Counts I, II, and V–VIII (Doc. 16) but moved to dismiss Counts III and IV for failure to state a claim (Doc. 17).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

## DISCUSSION

I.   **Count III: § 1983 Civil Conspiracy**

Defendants first assert that Plaintiffs have failed to state a valid civil conspiracy claim. (Doc. 17, at 3). Their argument, however, is precisely one sentence long: they list the elements of civil conspiracy under Illinois law and say only that Plaintiffs failed to

plead facts sufficient to allege those elements.

This argument is wholly deficient. First, Plaintiffs bring their civil conspiracy claim under § 1983, not state law. (Doc. 20, at 2). Though the elements are similar, they are not the same. *See, e.g.*, *Pena v. Ortiz*, 521 F. Supp. 3d 747, 750–51 (N.D. Ill. 2021). Even setting that aside, Defendants do not explain which of the elements of civil conspiracy Plaintiffs have failed to plead or why this Court should consider those elements unpled. "It is not the responsibility of the Court to research and construct parties' arguments" for them. *Rocklane Co. v. Travelers Cas. Ins. Co. of Am.*, No. 17-cv-2158, 2020 WL 1320963, at *4 (S.D. Ind. Jan. 21, 2020). Because "[p]erfunctory and undeveloped legal arguments are waived,'" the Court considers Defendants' first argument waived for the purposes of this motion. *Id.* (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)); *accord United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ." (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991))); *see also Rose v. Haney*, No. 16-cv-5088, 2017 WL 1833188, at *7 (N.D. Ill. May 8, 2017) (where defendant entirely failed to develop their argument that plaintiff failed to allege an element of their claim, that argument was waived).

Defendants next assert that Plaintiffs' civil conspiracy claim should be dismissed under the intra-corporate conspiracy doctrine. (Doc. 17, at 3). This argument, a scant four sentences long, is barely more developed than their first. The argument's first sentence quotes *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999),

for the proposition that "[a] conspiracy cannot exist solely between members of the same entity." (Doc. 17, at 3 (alteration in original)). The second sentence asserts that Weller and Hronec were both "serving in their respective capacities as employees and/or agents of Clay County," and that "a conspiracy cannot exist between employees and/or agents of Clay County." *Id.* The last two sentences merely state that Count III is consequently "insufficient in law" and that Defendants' motion should accordingly be granted as to Count III. *Id.*

Even assuming that this argument is sufficiently developed to avoid waiver, it is unclear whether the intra-corporate conspiracy doctrine applies to claims brought under § 1983. *Smith v. City of Chicago*, 785 F. Supp. 3d 356, 396–98 (N.D. Ill. 2025). The Seventh Circuit has applied the doctrine to civil conspiracy claims under 42 U.S.C. § 1985. *Id.* But the Seventh Circuit has not yet extended it to claims under § 1983, *e.g.*, *id.*; *Thomas v. City of Blue Island*, 178 F. Supp. 3d 646, 654 (N.D. Ill. 2016), and most district courts in this circuit decline to do so. *E.g.*, *Liggins v. City of Chicago*, No. 20-cv-4085, 2021 WL 2894167, at *5 & n.3 (N.D. Ill. July 9, 2021) (collecting cases).

Even if the intra-corporate conspiracy doctrine *does* extend to suits under § 1983, it very well might not apply on these facts. The doctrine "applies only when the agents of a corporation or government entity act within the scope of their employment in joint pursuit of the entity's lawful business." *Harris v. City of Chicago*, No. 20 cv 4521, 2020 WL 7059445, at *5 (N.D. Ill. Dec. 2, 2020) (first citing *Travis v. v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990); and then citing *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 633 (7th Cir. 1999)). Here, Plaintiffs allege

that Hronec and Weller attempted to cover up their illegal seizure by tricking them into allowing Creedence to be cremated, which would have destroyed a significant piece of evidence. They also allege that Hronec and Weller intentionally failed to document their alleged misdeed. It is hard to see how these actions could be within the scope of their employment, or Clay County's "lawful business." *Cf. Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000) ("The intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory.").

Even if the intra-corporate conspiracy doctrine limits suits under § 1983, Plaintiffs have alleged facts that could very well take this case out of the doctrine's ambit. Because "[i]t would be premature to dismiss the conspiracy Count[] before facts governing the applicability of these exceptions to the intracorporate conspiracy doctrine have been ascertained," Defendants' motion to dismiss Count III is denied without prejudice. *Liggins*, 2021 WL 2894167, at *5 (first citing *Weston v. City of Chicago*, No. 20 C 6189, 2021 WL 2156459, at *10 (N.D. Ill. May 27, 2021); and then citing *Harris*, 2020 WL 7059445, at *5).

**II.     Count IV:** *Monell*

Defendants also assert that Plaintiffs have failed to sufficiently allege a *Monell* claim against Clay County. To survive a motion to dismiss, a plaintiff pursuing a *Monell* theory of liability must typically allege one of the following three types of municipal action: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or

practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)); *see also Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th Cir. 2022) (explaining that municipalities "cannot be held vicariously liable under § 1983 for the constitutional torts of their employees; for the [municipality] to be liable, a municipal policy or custom must have caused [a plaintiff's] constitutional injury" (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))).

Defendants argue that Plaintiffs only alleged "boilerplate legal conclusions that do nothing more than regurgitate the elements of a *Monell* claim." (Doc. 17, at 4). Because "legal conclusions or elements of [a] cause of action . . . may be disregarded on a motion to dismiss," *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–82 (2009)), Defendants insist Count IV should be dismissed.

In response, Plaintiffs counter that they are relying on a different theory of municipal action than the three recounted above: a failure-to-train theory under the Supreme Court's decision in *City of Canton v. Harris*, 489 U.S. 378 (1989). (Doc. 20, at 6). Under *Canton*, *Monell* liability can be predicated on municipal *inaction* "'in a narrow range of circumstances'" where a "violation of rights is a 'highly predictable consequence' of a failure to provide officers what they need to confront 'recurring' situations." *J.K.J. v. Polk County*, 960 F.3d 367, 380 (2020) (en banc) (quoting *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)).

To establish *Monell* liability in a *Canton* claim, a plaintiff must show the

constitutional violation was "caused by a municipality's deliberate indifference to the risk of such violations." *Id.* at 381. Deliberate indifference, in turn, could be established either through the municipality's knowledge of a pattern of past similar violations or "from evidence of a risk so obvious that it compels municipal action." *Id.* at 380–81; *see also Flores v. City of South Bend*, 997 F.3d 725, 731–32 (7th Cir. 2021); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927–29 (7th Cir. 2004) (absence of prior suicides does not preclude *Monell* liability for failure to train employees on suicide prevention because prison does not "get a one free suicide pass").

Here, at the pleading stage, the Court cannot conclude that Plaintiffs have failed to plausibly allege a *Monell* claim. They aver that Weller, an official animal control officer, was never formally trained on animal control procedures or the use of lethal force in animal control. (Doc. 6, ¶¶ 18, 56). They similarly allege that Hronec—who was not an animal control officer but was nevertheless apparently permitted to take and use Clay County Animal Control and Shelter's equipment during an animal control operation—never received any certification or training on animal control procedures or the use of lethal force in animal control. *Id.* ¶¶ 20, 56. These allegations are not boilerplate recitations of the elements of a *Monell* claim but instead describe a total lack of training on when lethal force is appropriate in the animal control context.

Viewed in the light most favorable to Plaintiffs and accepting their allegations as true, the Court declines to dismiss Count IV. Plaintiffs have alleged a lack of training on animal control procedures in general and on lethal force in particular. If animal control officers receive no training on when it is appropriate to kill someone's pet, it seems

extremely foreseeable that on occasion pets will be killed. *See Flores*, 997 F.3d at 734 ("The law does not require the death or maiming of multiple victims before a city must institute proper training."). The Court concludes that Plaintiffs have plausibly alleged Clay County's deliberate indifference to "a risk so obvious that it compels municipal action," *J.K.J.*, 960 F.3d at 380–81, and therefore have plausibly stated a claim under *Monell*.

## Conclusion

For the reasons stated above, the Motion to Dismiss (Doc. 17) filed by Defendants Terry Hronec, Inanna Weller, and Clay County is **DENIED**.

Further, the parties were required by this Court's Order (Doc. 25) to file their stipulation selecting a mediator by December 23, 2025. No such stipulation has been filed. Accordingly, the parties shall file that stipulation **on or before February 25, 2026**.

**IT IS SO ORDERED.**

DATED:   February 18, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**